IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00617-CMA-MJW

THOMAS NEILSEN,

Plaintiff,

v.

GENIE CONNAGHAN, in her official capacity as Thomas Neilsen's parole officer,
MAGGIE M. MCELDERRY, in her official capacity as DOC facility parole officer, and
RICK RAEMISCH, in his official capacity as Executive Director of the DOC,

Defendants.

---

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (DOCKET NO. 54)

---

**Michael J. Watanabe**
**United States Magistrate Judge**

This case is before this Court pursuant to an Order of Reference to Magistrate Judge issued by Judge Christine M. Arguello on March 22, 2017. (Docket No. 12.) Now before the Court is Defendants Genie Connaghan, Maggie M. McElderry, and Rick Raemisch's (collectively "Defendants") Motion to Dismiss. (Docket No. 54.) Plaintiff Thomas Neilsen ("Plaintiff") filed a response. (Docket No. 56.) No reply was filed. The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and recommendation.

## I. BACKGROUND

Unless otherwise noted, the allegations below are taken from the Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint") (Docket No.

48), and described in the light most favorable to Plaintiff.

When this lawsuit was commenced, Plaintiff was incarcerated in the Colorado Department of Corrections' ("CDOC") Crowley County Correctional Facility ("CCCF"). He had been sentenced to four years in prison after pleading guilty to one count of sexual assault on a child and having judgment enter on one deferred count after he sought to withdraw his plea. He was compliant with CCCF requirements during his sentence, and scored "very low" on the Colorado Actuarial Risk Assessment. After being denied discretionary parole, Plaintiff's mandatory release date onto parole was June 20, 2017.

In January 2017, the Colorado Parole Board ("Parole Board") approved Plaintiff's proposed parole plan. The Parole Board deemed Plaintiff's wife an adequate sponsor, the home the two owned adequate housing, and the business they operated an adequate work opportunity.

After these conditions were established, Defendant Connaghan, Plaintiff's parole officer, interviewed Plaintiff's wife. After the interview, Defendant Connaghan determined that Plaintiff's wife was not "supportive" of the parole plan because she "declined to express a belief that her husband is not guilty of the offenses." On March 2, 2017, Defendant McElderry, a CCCF facility parole officer, informed Plaintiff that he would not be permitted to parole to his home or live with his wife due to Defendant Connaghan's findings. Plaintiff was told he would have to either parole to a community corrections facility, in which case he could not work at his business, or be homeless, which likewise would violate the conditions of release.

On June 19, 2017, Defendant McElderry formally presented these conditions to

Plaintiff for his signature, and told him that he would not be released if he did not agree to them. Plaintiff declined to sign the conditions. As he was preparing for his mandatory release the next day, Plaintiff was taken into custody and charged with violating the conditions of his parole.

Plaintiff asserts claims for declaratory and injunctive relief under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights. He argues that Defendants have arbitrarily, irrationally, and unconstitutionally interfered with his right to intimate and familial association. He seeks a declaration that the Defendants in their official capacities violated these constitutionally protected rights. He also seeks an injunction against Defendants Raemisch and McElderry prohibiting them from refusing to comply with the mandatory parole statute simply because Plaintiff asserts his constitutional rights. Finally, he requests an injunction against Defendants Connaghan and McElderry prohibiting them from violating the approved parole plan and from imposing additional unauthorized and unconstitutional parole conditions.

Defendants now seek to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim.

## II. LEGAL STANDARD

### a. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the

existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**b. Failure to State a Claim Upon Which Relief Can Be Granted**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R.

4

Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained

5

in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In assessing a motion to dismiss under Rule 12(b)(6), the usual rule is that a court should consider no evidence beyond the pleadings. *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir.2007). "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1216 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)("[i]f a document is referenced in and central to a complaint, a court need not convert the motion but may consider that document on a motion to dismiss.). In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24

(10th Cir.2006).

### III. ANALYSIS

Defendants cite four grounds for dismissal. First, they argue that Plaintiff's claim for injunctive relief against Defendants Raemisch and McElderry is moot because he has been released onto parole. Second, in the alternative, they assert that Plaintiff's due process claim fails because there is no constitutional right to re-parole. Third, Defendants argue that Plaintiff fails to state a claim for violations of Colorado state law and DOC administrative regulations. Finally, Defendants contend that Plaintiff has failed to state a claim for denial of familial association. The Court will address each in turn.

**a. Mootness**

Defendants argue that Plaintiff's request for an injunction against Defendants Raemisch and McElderry is moot. The Court agrees, and therefore will not address Defendants' argument in the alternative that Plaintiff does not have a constitutionally protected right to be re-paroled after parole has been revoked.

Article III of the Constitution requires that the federal courts render decisions only where there is a live case or controversy between parties. U.S. Const. art. III, § 2. An "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Alvarez v. Smith*, 558 U.S. 87, 130 (2009). If circumstances change during the pendency of the case that extinguish a party's legally cognizable interest in the action, the case is moot. *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009) (quotations omitted). Mootness is an issue of subject matter jurisdiction which can be raised at any stage of the proceedings. *Kennedy v. Lubar*, 273 F.3d 1293,

1301-02 (10th Cir. 2001).

Mootness has two aspects: (i) whether the issues are live; and (ii) whether the parties have a legally cognizable interest in the outcome. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011). The critical question is "whether granting a present determination of the issues offered will have some effect in the real world." *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir. 1999). When circumstances change such that the court is unable to grant effective relief that has some effect in the real world, a live case or controversy no longer exists and the case is, therefore, moot. *See McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1255 (10th Cir. 2010). Demonstrating that a case is moot is a heavy burden and lies with the party alleging that the action is moot. *See id.*

There are exceptions to the mootness doctrine. Thus, even if an action appears moot on its face, a court will refrain from dismissing the action when certain circumstances are present. The four generally recognized exceptions are: (1) the plaintiff continues to have secondary or collateral injuries even after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an alleged illegal practice, but is free to resume it at any time; or (4) the action is a properly certified class action suit. *See Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002).

In his Amended Complaint, Plaintiff seeks "an injunction against the DOC Defendants (Rick Raemisch and Maggie McElderry) prohibiting them from refusing to comply with § 18-1.3-401(1)(a)(V)(B), C.R.S. (2017) because Mr. Neilsen refuses to

relinquish his constitutional rights to intimate and familial association." (Docket No. 48 at ¶ 17.) Put more succinctly, Plaintiff seeks an order requiring these Defendants to not interfere with his statutorily-mandated release onto parole.

Defendants represent to the Court that the parole revocation complaint against Plaintiff was withdrawn, and that Plaintiff was subsequently released onto parole. Defendants attach a print out from the CDOC's Inmate Locator as confirmation of this fact.[1] Thus, to the extent that Plaintiff asserts a claim seeking his release onto parole, Defendants argue that such a claim is moot.

Strangely, Plaintiff did not respond to this argument. In fact, rather than respond to any of the specific arguments raised in the subject motion, Plaintiff merely re-filed his response (Docket No. 39) to a motion to dismiss (Docket No. 34) that the Court denied as moot (Docket No. 47) upon the filing of the Amended Complaint (Docket No. 48). Given that the two motions to dismiss address separate and distinct legal and factual issues, the Court questions the efficacy of this approach. In any event, because Plaintiff has already been released onto parole, he cannot maintain a claim in which the requested relief is to be released onto parole. Such a claim is moot, and therefore Plaintiff's claim against Defendants Raemisch and McElderry, as set forth in paragraph 17 of the Amended Complaint, should be dismissed.

The Court notes that neither party has provided any details as to the current conditions of Plaintiff's parole. It is possible that Plaintiff is living with his wife at his home, thus rendering this entire action moot. However, the Court cannot assume such

---

[1] The Court takes judicial notice of this fact under Fed. R. Evid. 201(b).

facts, and will therefore address whether Plaintiff is entitled to declaratory and injunctive relief against Defendants Connaghan and McElderry regarding their imposition of unauthorized parole conditions.

**b. State Law and DOC Regulations**

Defendants argue that Plaintiff's allegation that Defendants Connaghan and McElderry violated Colorado state statute and CDOC administrative regulations fails to give rise to Section 1983 liability. They assert that prison regulations generally do not create constitutionally protected rights, and therefore the violation of those regulations cannot implicate the Fourteenth Amendment. Defendants appear to misapprehend Plaintiff's claim.

It is well-established that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). However, in this case, Plaintiff's claim is not actually premised on the fact that Defendants Connaghan and McElderry ignored and acted in contravention of the findings of the Parole Board. Rather, Plaintiff alleges that the conditions imposed by Defendants Connaghan and McElderry, **in addition** to being incompatible with those approved by the Parole Board, were intrinsically unconstitutional. In other words, the conditions would have be constitutionally repugnant even if they had been approved by the Parole Board.[2] As discussed below,

---

[2] For example, the Court notes that Jonathan Stone, a named plaintiff in this action whose claims were voluntarily dismissed on July 14, 2017 (Docket No. 37), did in

Defendants Connaghan and McElderry's allegedly unilateral and extralegal imposition of such conditions both provide context for Plaintiff's claim, and further his contention that the parole officers acted arbitrarily and unreasonably by presenting him with a situation that would result in Plaintiff's parole being revoked, regardless of his ultimate choice.

Therefore, the Court does not interpret Plaintiff's claim as one arising from Defendants' alleged violation of state law and CDOC regulations, Rather, the Court must address whether Defendants Connaghan and McElderry's actions plausibly deprived Plaintiff of his First and Fourteenth Amendment right to familial association.

**c. Familial Association**

As recited by this Court in a prior ruling (*see* Docket No. 49), to state a claim for the deprivation of the right of familial association, Plaintiff must allege that (1) Defendants intended to deprive him of his protected relationship with his spouse, and that (2) Defendants either unduly burdened the protected relationship, or effected an "unwarranted intrusion" into that relationship. *See Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014). Plaintiff's interest in his protected familial relationship must be balanced against the state's interests in ensuring compliance with the conditions of release. The Court should consider, among other things, the severity of the infringement on the protected relationship, the need for Defendants' conduct, and possible alternative courses of action. *Id.*

The Court recognizes that the state of Colorado has an "overwhelming interest"

---

fact originally sue the Parole Board for violating his right to familial association. (*See* Docket No. 21 at 38.)

in ensuring that a parolee complies with the conditions of his release, and that he is returned to prison if he fails to do so. *Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998). Thus, "[a] parolee or probationer's First Amendment right of association . . . may be restricted to further the goals of parole or probation, as long as the restriction is reasonably related to achieving those goals." *Behlke v. Jordan*, 83 F.3d 424 (7th Cir. 1996). In Colorado, some of the goals of parole are "to encourage good behavior in prison and to encourage successful reintegration of convicted offenders into society." *Dean v. People*, 2016 CO 14, ¶ 21 (citing C.R.S. § 17-22.5-102.5). Moreover, "the participation of sex offenders in rehabilitative programs has been recognized by the Supreme Court as a legitimate penological interest." *Doe v. Heil*, 781 F. Supp. 2d 1134, 1140 (D. Colo. 2011), *aff'd*, 533 F. App'x 831 (10th Cir. 2013) (citing *McKune v. Lile*, 536 U.S. 24 (2002)). One must also keep in mind that "courts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a reasonable relationship to the goals of probation." *United States v. Turner*, 44 F.3d 900, 903 (10th Cir. 1995).

Balanced against the state's interest is Plaintiff's constitutionally protected interest in his relationship with his spouse. The marital relationship is protected from unreasonable governmental interference. *Morfin v. Albuquerque Pub. Sch*., 906 F.2d 1434, 1439 (10th Cir. 1990). However, the parameters of that interest are less clear than those governing the parent-child relationship, where state interference is permitted only under compelling circumstances. *See United States v. Smith*, 606 F.3d 1270, 1283 (10th Cir. 2010). Case law suggests that the standard is lower outside the confines of

the parental relationship. *See United States v. White*, 782 F.3d 1118, 1140 (10th Cir. 2015) (a non-custodial grandparent's right to familial association is entitled to less constitutional protection than that of a parent).

Here, Defendants concede that Plaintiff has a right to associate with his wife, and that any restrictions "must still bear a rational connection to the state's parole goals and be reasonably related to the nature of the offense and the offender's history and characteristics." (Docket No. 54 at 9.) Plaintiff, on the other hand, argues that any restrictions on this right must be "fine-tuned" or narrowly-tailored in service of a compelling state interest.

The Court need not decide at this stage what standard to apply because the Amended Complaint plausibly alleges that Defendants Connaghan and McElderry intentionally placed an undue burden or effected an "unwarranted intrusion" on Plaintiff's relationship with his wife, and that the restrictions were not rationally related to the state's penological goals. Although Defendants discuss at some length the Parole Board's exclusive authority in establishing the conditions of parole (*see* Docket No. 54 at 7), it appears undisputed that the Parole Board **approved** Plaintiff's parole plan. Instead, Plaintiff alleges that Defendants Connaghan and McElderry, acting on their own and contrary to the findings of the Parole Board, determined that Plaintiff would not be permitted to live at home with his wife. Thus, there is an inherent factual question as to the reasonableness and necessity of the imposed conditions: the Parole Board, exercising its exclusive authority and discretion, did not feel that the conditions were necessary; Defendants Connaghan and McElderry, parole officers with no such authority, disagreed and imposed the restrictions anyway. These facts alone preclude

13

the Court from dismissing Plaintiff's claim.

Moreover, there is a question as to whether the restrictions are reasonably related to the state's "overwhelming" interest in ensuring compliance with conditions of release. Defendant McElderry informed Plaintiff that he was prohibited from living at home with his spouse because Defendant Connaghan had reported that Plaintiff's wife declined to express a belief that her husband was not guilty, which meant that she was not properly "supportive" of the parole plan. (Docket No. 48 at ¶ 9.) In contrast to this hearsay-within-hearsay statement, Plaintiff alleges that his wife explained to Defendant Connaghan that "she is fully committed to supporting her husband's parole requirements and deeply invested in his success, as are the entire family and members of the community." (*Id*. at ¶ 10.) The Court cannot determine which of these statements is accurate on a Rule 12(b)(6) motion. Nor can the Court determine as a matter of law that the wife's alleged failure to express a belief that Plaintiff is not guilty of the offenses for which was convicted is sufficient reason to prohibit the two from living together.

Finally, while Plaintiff is not forbidden from all association with his wife, it is undeniable that prohibiting them from cohabitating acts as burden or intrusion on their protected marital relationship. Whether this is an "undue" burden will turn on the particular facts discussed above, but is not properly decided at this stage of the litigation.

### IV. RECOMMENDATION

Based upon the foregoing, it is hereby **RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 54 ) be **GRANTED** in part and **DENIED** in part.

Specifically,

- That Plaintiff's claim for injunctive relief against Defendants Raemisch and McElderry, as contained in paragraph 17 of Plaintiff's Amended Complaint (Docket No. 48), be **DISMISSED** as moot; and
- That Plaintiff's claim for declaratory and injunctive relief against Defendants Connaghan and McElderry, as contained in paragraphs 16 and 18 of Plaintiff's Amended Complaint (Docket No. 48), be permitted to proceed.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

BY THE COURT

Date: February 14, 2018  
Denver, Colorado

s/ Michael J. Watanabe  
Michael J. Watanabe  
United States Magistrate Judge